THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ RAMÓN HERNÁNDEZ JUSTINIANO, Defendant and Appellant.

No. Cr–62–219.   Decided December 18, 1962.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra. ·

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The district attorney of the Superior Court of Puerto Rico, Mayagüez Part, charged José Ramón Hernández Justiniano with a violation of § VIII of Act No. 141 of 1960,

because "on or about July 1, 1961 and in Mayagüez, Puerto Rico ... he illegally, willfully, maliciously and criminally, and under the influence of intoxicating liquor was driving a Chevrolet motor vehicle on a public highway."

The evidence showed that on that day, about four-thirty in the afternoon, the injured party Rafael Quiñones García was driving his automobile near a school when he was forced to stop his vehicle, whereupon defendant, who was driving behind him, collided with Rafael Quiñones García's automobile. The eyewitness Leopoldo Enrique Martínez, an impartial witness, describes the collision in the following manner: "Well, precisely because he was in front, (he refers to Rafael Quiñones García) he suddenly stopped, and the other one (he refers to defendant) was very close behind." (Tr. Ev. 59.)

According to the injured party's version, when defendant alighted from the car, he staggered while walking, "smelled strongly of liquor and tried to pat me with his hand ... his eyes were red. In a very drunken condition." (Tr. Ev. 14.) This is the only categorical description of defendant's state of intoxication. The witness for the People, Doctor René Quintana Ramírez, who took an urine sample from defendant that same afternoon, testifies: "... I would say that this gentleman had had some liquor, but his condition was ... was generally good, normal. That is, he behaved very well, I would say. He was not upset, and he agreed to everything he was requested" (tr. ev. 4); his strokes were correct when writing (tr. ev. 6); he did not stagger when walking (tr. ev. 9); his speech was quite distinct (tr. ev. 10); he does not remember that his eyes were red (tr. ev. 10); he did not stutter when speaking (tr. ev. 10); the only thing he noticed in him was the smell of liquor (tr. ev. 10); that on several occasions he has ridden with other persons who were driving in more or less the same condition that defendant was in (tr. ev. 12). The witness

Leopoldo Enrique Martínez, who observed defendant at the moment of the collision, testified: that defendant was driving in his automobile in the company of a ten or twelve-year old girl (tr. ev. 52) ; that defendant was in an agreeable disposition, normal, staggered at no moment (tr. ev. 53) ; was calm (tr. ev. 54) ; at that moment he did not smell of liquor (tr. ev. 54). The witness Carlos Fernando Cintrón testifies that on that day defendant came to his house in a nervous state because he had hit a car and the witness told him: "You are nervous; let's have a few drinks," and they went to the house of the witness' mother where there was a bottle of "Puerto Rico" rum and they had five drinks (tr. ev. 61) ; shortly thereafter they went to Police Headquarters, the witness driving (tr. ev. 62) ; that they went to Police Headquarters on account of "that accident" (tr. ev. 62) ; that defendant was in perfect condition (tr. ev. 62) ; that they had "five little drinks" (tr. ev. 63). The policeman Alejandro Santiago, whose testimony was put at defendant's disposal by the Prosecuting Attorney, testifies: that on the afternoon of the accident he saw defendant at Police Headquarters and "he stated that after having had the accident and after having reached an agreement with Quiñones, he had had a few drinks ... after the accident" (tr. ev. 65) ; the witness admits having told the Prosecuting Attorney that when he saw defendant, his eyes were red and he was staggering (tr. ev. 71) ; later he adds that what he told the Prosecuting Attorney was that "at first he was rather staggering, but shortly thereafter he went on walking correctly" (tr. ev. 72) ; that at Headquarters, before the witness defendant "behaved normally" (tr. ev. 73).

The expert for the People, chemist Pedro A. Sierra Purcell established, in view of the verified urinalysis, that there was thirteen hundredths of one per cent by weight of alcohol in defendant's blood (tr. ev. 30). In the expert testimony there are very interesting points regarding alcoholic

tolerance in certain individuals which cause the conditions of alcoholic intoxication to vary, thereby affecting or not the capacity of the alcohol consumer, but we have omitted his account in view of the following reasoning:

■ Section 5–801(b) of Act No. 141 of July 20, 1960, provides: "In any criminal prosecution for a violation of paragraph (a) above, relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, or breath, shall give rise to the following presumptions: ... (2) If there was at the time of the analysis an excess of five (5) hundredths of one (1) per cent but less than fifteen (15) hundredths of one (1) per cent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered jointly with other competent evidence in determining the guilt or innocence of the defendant." In this case, the result of the test was of 0.13 per cent alcohol and therefore, from the chemical analysis to which defendant voluntarily submitted we cannot infer his guilt unless the rest of the evidence shows that defendant was under the influence of intoxicating liquor while driving his automobile.

■■ With the exception of the injured party's testimony, the rest of the evidence, which seems to us to be the most unbiased, shows that at the time of the accident, when heading towards Headquarters, and later at the hospital, when having a blood test taken, defendant was not in such a state of intoxication that it was impossible for him to drive a motor vehicle successfully or skillfully. Our law does not pursue a total abstinence from liquor at the moment of driving an automobile, but rather a moderate abstinence to the scientific limit at which the use of intoxicating liquor does not constitute a public danger.

After considering the entire evidence introduced in this case, the same does not show defendant's guilt beyond any reasonable doubt, and this being so, it is our duty to decide the doubt in favor of defendant and to acquit him.

The judgment appealed from will be reversed.